**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF FLORIDA**
**GAINESVILLE DIVISION**

IN RE:

HINTZE, MATTHEW BRUCE and   Case No.  __12-10462-KKS__
HINTZE, LARINA K.                              Chapter 7

        Debtors.
_____/

THERESA M. BENDER, as Trustee and as
Managing Member of TutoringZone, LC,
and TUTORINGZONE,  LC, a Florida
Limited Liability Company,

        Plaintiffs,

vs.                                                         Adv. No.  _____

MATTHEW  BRUCE  HINTZE,  LARINA
K.  HINTZE,  PAUL  HINTZE,  BRUCE
HINTZE, TUTORINGZONE II, LLC, a
Florida  Limited  Liability  Company,
CYNTHIA    L.    FRENCHMAN    and
CHRISTOPHER M. JAMES,

        Defendants.
_____

## COMPLAINT

        COMES NOW, THERESA M. BENDER as Chapter 7 Trustee of the Bankruptcy Estate

of Matthew Bruce Hintze and Larina K. Hintze and as managing member of TutoringZone, LC,

and TUTORINGZONE, LC, a Florida Limited Liability Company, and through the undersigned

counsel files this Complaint against Defendants, MATTHEW BRUCE HINTZE, LARINA K.

HINTZE, PAUL HINTZE, TUTORINGZONE II, LLC, a Florida Limited Liability Company,

CYNTHIA L. FRENCHMAN, and CHRISTOPHER M. JAMES, pursuant to Federal Rule of

Bankruptcy Procedure 7001(2), (9); 28 U.S.C. §§ 157, 544, 547, 548, 1334, 1652, 2201; and

sections 68.04, 86.011 et seq., 608.4225, and 726.105 et seq. of the Florida Statutes, and states as follows:

**Jurisdiction and Venue**

1. On November 1, 2012 ("the Petition Date"), Debtors Matthew Bruce Hintze and Larina K. Hintze ("the Debtors") filed a voluntary, joint petition ("the Petition") for relief under Chapter 7 of Title 11 of the United States Code, 11 U.S.C. § 101 et seq. ("the Bankruptcy Code") in the above-styled Court.

2. Theresa M. Bender ("the Trustee") has been duly appointed as the Chapter 7 Trustee for the Debtors' Bankruptcy Estate ("the Bankruptcy Estate").

3. TutoringZone, LC ("TutoringZone") is a Florida Limited Liability Company previously doing business in Florida. The Debtors scheduled TutoringZone as being solely owned by Matt Hintze according to the Petition and the Debtors' amended Schedule B. Accordingly, and notwithstanding the disputes presented below, the Trustee facially succeeded to full ownership and has the authority to bring an action on behalf of TutoringZone.

4. TutoringZone II, LLC ("TZ2") is a Florida Limited Liability Company previously doing business in Florida. TZ2 acquired all of TutoringZone's intellectual property pre-petition. TZ2 currently operates the business formerly operated by TutoringZone by applying its intellectual property and service marks in continuation of the business.

5. Christopher M. James ("Mr. James") is a Creditor of the Bankruptcy Estate. Mr. James claims a security interest in all of the personal property owned by the Debtors. Mr. James also claims a security interest in all of the personal and intellectual property owned by TutoringZone. Finally, Mr. James is the 100% owner of co-defendant TZ2.

6.      Paul Hintze is a Florida citizen and resident.  Paul Hintze is the brother of Matthew Hintze.  Paul Hintze has worked as an employee of both TutoringZone and TZ2.  Paul Hintze may claim an interest in TutoringZone.

7.      Bruce Hintze is a Florida citizen and resident.  Bruce Hintze is the father of Matthew Hintze.  Bruce Hintze was listed as a pre-petition creditor of the Debtors but declined to file a proof of claim before the claims-bar deadline.  Bruce Hintze may claim an interest in assets of TutoringZone.

8.      Cynthia L. Frenchman is a citizen and resident of the State of California.  Ms. Frenchman is a business associate of Christopher M. James, serving as a point of contact and personnel manager for his business CMJ Consulting, Inc.

9.      This is an adversary proceeding pursuant to Rules 7001(1), 7001(2), 7001(4), 7001(7), and 7001(9) of the Rules of Bankruptcy Procedure.

10.     This adversary proceeding seeks a variety of alternative determinations relating to property of the Bankruptcy Estate, the recovery of property related to the Bankruptcy Estate, and a potential objection to discharge, and thus arises out of Title 11 of the United States Code, as well as arising in and relating to the above styled case.

11.     Accordingly, this Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157, 1334, 1652 & 2201; 11 U.S.C. §§ 548 & 727; and sections 68.04, 86.011 et seq. & 726.105 et seq. of the Florida Statutes.

12.     This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1), (b)(2)(A), (b)(2)(H), (b)(2)(J), (b)(2)(K), and (b)(2)(O).

13.     Venue of the Debtors' Chapter 7 case and of this adversary proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408-1409.

## Factual Allegations

Pre-Petition Facts

14.     Prior to 2011, TutoringZone was owned jointly between Matthew Hintze and non-party Ethan Fieldman.  Mr. Fieldman is a third-party defendant to the adversary proceeding case number 13-01007 related to Administrative Case captioned above.

15.     As alleged in Proof of Claim 22, on November 10, 2010, the Debtors executed and delivered a promissory note to Mr. James in the principal amount of $375,000.00 at 12% interest maturing within one year.  The note purports to be secured by an interest "in all of Maker's assets."  In adversary proceeding case number 14-01001 related to the Administrative Case captioned above, the Trustee has challenged the validity of the security interest.  The resolution of that proceeding does not affect the issues in this complaint.  A true and correct copy of the promissory note is attached hereto as **Exhibit 1**.

16.     As more fully described in Debtors' Counterclaims in adversary proceeding case number 13-01007 (the "Counterclaims"), Matthew Hintze and Mr. Fieldman became unable to manage TutoringZone together, filed respective lawsuits, and resolved the lawsuits by a process that allowed each to bid for the other's interest in TutoringZone and related entities.  Matthew Hintze had the higher bid.

17.     On May 27, 2011, Matthew Hintze and Ethan Fieldman executed a final settlement agreement effectuating the bid, at which point Matthew Hintze became the sole 100% owner and manager of TutoringZone.

18.     No operating agreement applicable to TutoringZone has been created to manage the rights of TutoringZone's members.

19.     As part of the process by which Matthew Hintze raised the money to fund his successful bid, Matthew and Larina Hintze executed a series of promissory notes to certain investors.  These investors required the creation of an Advisory Committee for TutoringZone consisting of four members: Matthew Hintze as CEO of TutoringZone, and three investors—David Whitney, John Spence, and Kevin Ogilby.   All of the committee members agreed, accepted, and executed a letter agreement dated June 7, 2011 confirming this understanding.

20.     As a result of the execution of these notes and the overvaluation of TutoringZone, the Debtors became insolvent as a result of the transactions.

21.     On June 29, 2011, Matthew Hintze caused to be filed an amendment with the Florida Division of Corporations enclosing Articles of Amendment that amended the managing members of TutoringZone by removing Ethan Fieldman as a managing member.  A true and correct copy of the June 29, 2011 amendment is attached hereto as **Exhibit 2**.

22.     On July 5, 2011, Matthew Hintze caused to be filed an amendment with the Florida Division of Corporations enclosing Articles of Amendment that amended the managing members of TutoringZone by adding Paul Hintze and Larina Hintze as managing members.  No formal transfer or exchange of value accompanied the addition of new members.  Instead, the new members were added solely on the advice of professionals to decrease exposure to remedies against single-member LLCs under Florida law.  A true and correct copy of the July 5, 2011 amendment is attached hereto as **Exhibit 2**.

23.     At the time of the amendment, Paul Hintze was an employee of TutoringZone.

24.     TutoringZone was not successful following the settlement agreement.  On or about April or May 2012, the Debtors held a meeting with certain investor creditors "offer[ing] favorable treatment to any of the creditors willing to advance additional capital to try to save the

business," as alleged by the Debtors in the Counterclaims.  None of the requested investor creditors provided funds.

25.    On May 22, 2012, TutoringZone as lessor executed an Intellectual Property Lease in favor of Mr. James and Ms. Frenchman.  The Debtors alleged that the purpose of the transaction was that Mr. James and Ms. Frenchman "advance[d] $75,000.00 in emergency capital to help TutoringZone meet current expenses," as alleged by the Debtors in the Counterclaims.  A true and correct copy of the Intellectual Property Lease is attached hereto as **Exhibit 4**.

26.    Mr. James was the exclusive source of any funds provided as consideration to the Intellectual Property Lease.

27.    In exchange, the Intellectual Property Lease granted to Mr. James and Ms. Frenchmen an assignable, non-exclusive ten-year lease of the intellectual property of TutoringZone with the option to renew the lease in perpetuity for ten year terms at the fixed cost of $10,000 per ten year terms with no provision made for inflation.  The lease contemplated use of the intellectual property by TZ2, an entity that was not registered and authorized to do business in the state of Florida until July 3, 2012.  The Debtors have previously alleged that they agreed at this time "to allow their personal property, such as it was, to be liened as additional consideration" for the November 20, 2010 note.  No security interest was created as part of the transaction, either over the assets of TutoringZone or the assets of the Debtors.  It was also allegedly agreed at this time that if TutoringZone could not be stabilized, that TutoringZone would transfer its intellectual property permanently for additional consideration.

28.    TutoringZone was not stabilized by this infusion of capital.

29.     It was not plausible and was not contemplated by the Debtors or Mr. James that $75,000 would be sufficient to stabilize the company at that time given TutoringZone's financial circumstances.  At a May 2012 meeting, the Debtors provided information on the status of TutoringZone in which it asserted that besides the obligations to investors incurred as a result of the earlier bidding process, the debt related to TutoringZone then included $475,000 owed to Chris James (at least $275,000 of which was matured debt accruing at 18% or $49,500 annually); $222,167.72 in business loan and line-of-credit debt; $18,386.27 in business credit card debt, $478,189.00 owed on a business real-estate lease with approximately 50 months remaining; and $185,334.50 owed on a business-equipment financing relationship.

30.     Nor was it plausible and contemplated by the Debtors or Mr. James that $75,000 was reasonable value of a non-exclusive lease of TutoringZone intellectual property, except insofar as TutoringZone itself was contemplating dissolution and would no longer exist as competition for TZ2.    The Intellectual Property Lease required that Mr. James and Ms. Frenchman, or any affiliated entity, "may not explicitly hold themselves out to be Lessor or to be affiliated with Lessor" while at the same time permitting full use of TutoringZone's service marks and prior intellectual property.

31.     At a May 2012 meeting, the Debtors provided an outline through meeting notes certain methods of resolving TutoringZone, each of which involved the personal bankruptcy of the Debtors and each of which involved a mechanism for protecting the intellectual property of TutoringZone through a new company.  A true and correct copy of the meeting notes is attached hereto as **Exhibit 5**.

32.     On June 4 2012, a mere thirteen days after the execution of the Intellectual Property Lease, the Debtors effectuated this proposal by agreeing to the sale of TutoringZone

assets.  TutoringZone agreed to sell its intellectual property to TZ2 for the consideration of $200,000.00, with an offset for amounts that TutoringZone owed TZ2.  TZ2 was solely controlled by Mr. James, who later hired the Debtors and other TutoringZone employees to perform similar if not identical work.  As a result, to outside consumers, the Tutoring Zone entity as a going concern appeared to continue in business without significant interruption.  A true and correct copy of the Intellectual Property Transfer Agreement is attached hereto as **Exhibit 6**.

33.    Mr. James knew at the time he executed the Intellectual Property Transfer Agreement that TZ2 had not been formed with the Florida Division of Corporations. TutoringZone did not have actual knowledge of the lack of formation, however.  A true and correct copy of the documents forming TZ2 are attached hereto as **Exhibit 7**.

34.    The Intellectual Property Transfer Agreement and related documents do not disclose any debt or basis for formation of a security interest.  Nor does the Intellectual Property Transfer Agreement reflect on its face any interest of Mr. James.

35.    On or about June 11, 2012, Mr. James caused to be filed a UCC-1 filing claiming that he individually owned a security interest in certain property of TutoringZone, LC.  A true and correct copy of the UCC-1 filing is attached hereto as **Exhibit 8**.

36.    Specifically, Mr. James claimed an interest in "All personal and intellectual property owned by the Debtor [TutoringZone], including but not limited to the intellectual property described on the attached Schedule A."  The attached Schedule A to the UCC-1 filing is substantively identical to the Schedule A attached to the Intellectual Property Transfer Agreement, although the footers of the documents have changed and the subheading was changed from "Intellectual Property" in the Transfer Agreement to "Intellectual Property Collateral" in the UCC-1 filing.

37.     Accordingly, Mr. James falsely asserted a security interest in intellectual property that he knew or had reason to know no longer belonged to TutoringZone but instead belonged to TZ2 by virtue of a transfer executed by Mr. James himself a week before the UCC-1 filing.

38.     Despite the fact that all right, title, and interest in the intellectual property of TutoringZone had been transferred to TZ2 as of the "Execution Date" of the Intellectual Property Agreement, June 4, 2012, TutoringZone continued to utilize the intellectual property and operate under the business marks through the end of the Summer 2012 semester.  TZ2 took no action against TutoringZone for this unauthorized activity.

39.     At the conclusion of the Summer 2012 semester, TutoringZone as a business continued without interruption under the new management of TZ2.  Notwithstanding the lack of provision for physical assets of TutoringZone in any document including the Intellectual Property Transfer Agreement, TZ2 took possession of non-intellectual personal property in the conduct of the business.

40.     At no time was any equity interest in TutoringZone delivered to any employee of TutoringZone based on service.  Instead, employees of TutoringZone were invited to continue employment with the continued business TZ2.

41.     Neither TutoringZone nor any of its business creditors received the benefit of the $200,000.00 consideration recited in the Intellectual Property Transfer Agreement.  Instead, Mr. James effectuated the transfer by forgiving $200,000.00 of debt personal to the Debtors.

42.     Mr. James was owed amounts by TutoringZone for alleged payroll advances in May 2012 and the "pro-rata un-used portion of the Lease Payment" provided in the termination provision of the Intellectual Property Lease, if in fact such provision was ever invoked.  No such offset was applied to the debt forgiveness given to the Debtors.

43.    TutoringZone was not formally wound down or dissolved but was no longer operated by any person due in part to the dispute described herein.   The entity was administratively dissolved by the State of Florida on September 27, 2013 and otherwise brings actions here as part of it obligation to wind down the affairs of the entity.

Post-Petition, Pre-Notice of Sale Facts

44.    On November 1, 2012, the Debtors filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code (the "Petition").   The Petition, filed at docket number 1 of the administrative case captioned above, included a summary of schedules (the "Initial Schedules") noting $603,423.97 in assets and $2,676,959.68 in liabilities.

45.    The Initial Schedules provided that the Husband solely owned a 100% interest in TutoringZone, LC, and valued the interest at $100.00.   The schedules provided that the value to the Bankruptcy Estate was zero because liabilities exceeded assets.   Moreover, the Initial Schedules recite that Mr. James "has a recorded UCC-1 which attaches to all of the personal and intellectual property owned by this entity."   The Debtors sought to exempt their $100.00 interest as personal property under the Florida Constitution's allowance for limited personal-property protection.

46.    The Initial Schedules listed a variety of personal property assets as either jointly owned, owned by the husband, or owned by the wife as the circumstances dictated.

47.    The Initial Schedules listed a total of $10,872.00 in personal property.   On Schedule D of the Initial Schedules, the Debtors listed that Mr. James was a secured creditor over all personal property of the Debtors in the amount of $10,872.00 as a result of an obligation incurred on November 10, 2010.

48.     Schedule F of the Initial Schedules listed Mr. James as an unsecured creditor in the amount of $275,000.00 for a debt incurred on May 12, 2011.  A true and correct copy of a promissory note dated May 12, 2011 is attached hereto as **Exhibit 9**.

49.     The Debtors' Statement of Financial Affairs included within the Petition identified certain transfers related to TutoringZone made within two years of the filing of the Petition.   The Debtors identified the June 4, 2012 transfer for intellectual property from TutoringZone to TZ2.   The Debtors identified no transfer of any membership interest in TutoringZone from November 1, 2010 forward.

50.     Mr. James filed no proof of claim within the time permitted by the Bankruptcy Code.

51.     On May 31, 2013, the Debtors filed an amended Schedule B and Summary of Schedules, filed at docket numbers 108 and 110 (corrective filing) of the administrative case captioned above, increasing the value of certain personal property to $21,164.97 total.  The filing continued to list TutoringZone as 100% owned by the husband, Matthew Hintze.  On the same day, the Debtors filed a declaration at docket number 111 affirming that "[t]he information contained in the [Amended Summary of Schedules with Amended Schedule B - Personal Property] is true and correct to the best of our knowledge and belief."

52.     On September 13, 2013, the Debtors filed an amended Schedule F and Summary of Schedules, filed at docket number 149 of the administrative case captioned above.  The filing made no mathematical changes but amended Schedule F to reflect that certain creditors' claims were disputed, including the claims of Mr. James and all creditors whose claims could be tied to the funding raised for bidding purposes.

53.     The Debtors have not disclosed any substantial income or transfer from TutoringZone to themselves in anticipation of bankruptcy or concurrent with or following the execution of the Intellectual Property Transfer Agreement.

54.     No other amendments of the bankruptcy schedules have been filed.

Post-Notice of Sale Facts

55.     On September 23, 2013, the Trustee filed the Report and Notice of Intention to Sell Property of the Estate by Private Sale (the "Notice of Sale"), filed at docket number 155 of the administrative case captioned above.  The Notice proposed to sell the "Debtors' 100% membership interest in TutoringZone, LC for the sum of $10,000.00" to an entity named TZ Acquisition, LLC.

56.     On September 30, 2013, after the deadline to file proofs of claim had passed, the creditor Mr. James filed Proof of Claim 22 seeking a secured amount of $508,520.55 based on a note dated November 10, 2010 and a UCC-1 filing dated June 11, 2012.  The validity of the asserted lien is the subject of a separate adversary proceeding and is not relevant to this matter.

57.     On October 14, 2013, the Debtors filed an objection to the Notice of Sale, filed at docket number 171 of the administrative case captioned above (the "First Debtor Objection"). The objection asserted that the Trustee "has no ability under the law to sell a Debtors' *joint* LLC '100%' membership interest outright."  (emphasis added).  The objection argued that the Trustee was limited to her right to receive distributions absent an assumption of the operating agreement as an executory contract."

58.     The First Debtor Objection contradicted earlier testimony of Matthew Hintze.  In his initial 2004 examination conducted on April 15, 2013, Matthew Hintze explained that he was

the 100% owner of TutoringZone and that he considered, for the purposes of contract, that he was "one and the same" as TutoringZone.

59.     The First Debtor Objection was at least partially consistent with other earlier testimony of Matthew Hintze.  In his continued 2004 examination conducted on May 21, 2013, Matthew Hintze explained that even though he was the 100% owner of TutoringZone, he personally considered that he and his wife owned TutoringZone by virtue of their marriage. When asked why Paul Hintze and Larina Hintze were added as members on the Florida Division of Corporations website, Matthew Hintze testified that they were added on the advice of professionals because "we were advised the State of Florida frowns on one member LLCs, and so I was encouraged to add a family member."  He further testified that Paul Hintze never received any ownership interest in TutoringZone.

60.     The 2011 tax returns for TutoringZone confirm that only Ethan Fieldman and Matthew Hintze were provided with K-1s as having a membership interest during the year 2011.

61.     On or about October 14, 2013, Mr. James filed an objection to the Notice of Sale, filed at docket number 172 of the administrative case captioned above.  In the objection, Mr. James contended that the sale sought to sell "household goods" that were subject to his security interest and that he was improperly being denied the opportunity to credit bit on the membership interests.  Issues related to credit bidding caused the hearing on the Notice of Sale to be continued to a hearing on January 9, 2014.

62.     On January 7, 2014, the Debtors filed an amended objection to the Notice of Sale, filed at docket number 287 of the administrative case captioned above (the "Amended Debtor Objection").  The Amended Debtor Objection noted that pursuant to the Florida Division of Corporations website, that there are "three members of the LLC: Matthew Hintze, Larina Hintze,

and Paul Hintze." The Amended Debtor Objection then stated, without providing an explicit theory, that Florida does "not recognize a transferable personal property interest in the membership interests of the Debtors."

63.     On January 8, 2014, the Trustee withdrew the Notice of Sale, as filed at docket number 290 of the administrative case.

64.     On January 9, 2014, the Bankruptcy Court approved the compromise of certain claims improperly raised by the Debtors, assumed by the Trustee, and compromised by the Trustee. Such claims related to alleged bad acts taken by certain investors in TutoringZone. All of the parties recognize that TutoringZone has parallel and similar claims to those compromised by the Trustee.

65.     On January 23, 2014, Paul Hintze, purportedly acting on behalf of TutoringZone, assigned all claims of any kind owned by TutoringZone to Bruce Hintze for the consideration of $1,000. A true and correct copy of the Assignment, along with the letter from counsel for Bruce Hintze validating same, is attached hereto as **Exhibit A**.

66.     The Trustee was not given notice of the January 23, 2014 assignment prior to its execution and has otherwise been advised of no actions taken on behalf of TutoringZone by anyone purported to be acting on its behalf at any time after the Petition was filed.

67.     The Trustee has not authorized any actions to be taken on behalf of TutoringZone prior to the filing of this complaint.

68.     In at least one subsequent hearing, counsel for the Debtors has suggested that it is necessary to determine the ownership of the TutoringZone membership interests and postulated the filing of an adversary proceeding on that issue.

### Count I - Declaratory Judgment (TutoringZone solely owned by Matthew Hintze)

69.     The Trustee adopts and re-alleges the allegations contained in paragraphs 1-13, 14-23, and 44-68 above.

70.     This is an adversary proceeding to determine an interest in property and obtain a declaratory judgment relating to the same under Bankruptcy Rule 7001(2), (9).

71.     Florida law is applicable to determine the interests of certain persons in a Florida limited liability company under Chapter 608 of the Florida Statutes.  Federal law is applicable to determine the effect of Florida law on the Bankruptcy Code.

72.     Based on statements made by the Debtors' counsel in at least one recent filing and one recent hearing in the administrative case, there is a bona fide dispute as to the pre-petition ownership of TutoringZone.  Specifically, the Trustee believes that TutoringZone was solely owned by Matthew Hintze and thus the Trustee succeeded to all right, title, and interest, including managerial rights and interests, upon the filing of the Petition.

73.     The pre-petition ownership structure of TutoringZone will affect administration of the estate because it is one of the few significant assets presumably held by the estate at present.  Accordingly, there is an actual and present need for a declaration as to the pre-petition ownership structure of TutoringZone.

74.     Such declaration deals with a present controversy with respect to an ascertainable state of facts.  Specifically, the Trustee asserts that the Debtors' schedules, testimony, and course of business dealing dictate that the entity was solely owned while the Debtors have now suggested—without directly asserting—that the annual LLC statement reflects ownership interests of Larina Hintze and Paul Hintze.

75.     Subject to the alternative counts for specific declarations below, it is believed that the powers, privileges, and rights associated with ownership in TutoringZone, including but not limited to the right to settle or prosecute claims, are dependent upon the facts or law applicable to the facts.

76.     There are persons who have, or reasonably may have an actual, present, adverse, and antagonistic interest in the subject matter of this count.  Specifically, Paul Hintze and Larina Hintze may claim interest in TutoringZone and may seek to enforce Florida law to exclude the Trustee from exercising managerial rights and privileges.

77.     All antagonistic and adverse interests that the Trustee has been made aware of— the Debtors being the persons best situated to raise such issues as they have done—are before the court to resolve the dispute.  If any further adverse interests are identified, the Trustee fully intends to make persons with non-frivolous assertions of interest parties to the dispute.

WHEREFORE, the Trustee prays for a judgment declaring that at the time of the filing of the Petition, that TutoringZone was solely owned individually by Matthew Hintze and that all right, title, and interest in TutoringZone including managerial rights succeeded by operation of law under 11 U.S.C. § 541 to Theresa Bender as Trustee of the Bankruptcy Estate, and for such other and further relief as is just and proper.

**Count II - Declaratory Judgment (TutoringZone owned as entireties property)**

78.     The Trustee adopts and re-alleges the allegations contained in paragraphs 1-13, 14-23, and 44-68 above.

79.     This is an adversary proceeding to determine an interest in property and obtain a declaratory judgment relating to the same under Bankruptcy Rule 7001(2), (9).

80.     Florida law is applicable to determine the interests of certain persons in a Florida limited liability company under Chapter 608 of the Florida Statutes.  Federal law is applicable to determine the effect of Florida law on the Bankruptcy Code.

81.     Based on statements made by the Debtors' counsel in at least one recent filing and one recent hearing in the Administrative Case, there is a bona fide dispute as to the pre-petition ownership of TutoringZone.  Specifically, the Trustee believes that TutoringZone was solely owned by Matthew Hintze and thus the Trustee succeeded to all right, title, and interest, including managerial rights and interests, upon the filing of the Petition.

82.     This count is filed as an alternative to Count I, along with Counts III and IV.  Because Count I seeks an actual declaration of the pre-petition ownership structure of TutoringZone, the allegations of the Debtors have suggested multiple possible outcomes.  This count solely addresses the factual finding that TutoringZone was wholly owned by both Debtors Matthew Bruce and Larina K. Hintze as tenants by the entireties.

83.     The effect of the findings of the pre-petition ownership structure of TutoringZone will affect administration of the estate because it is one of the few significant assets presumably held by the estate at present.  In the event that TutoringZone is owned as entireties property, there is a further dispute as to the authority of the Trustee to manage TutoringZone and sell whatever interest the Bankruptcy Estate has in TutoringZone.  Accordingly, there is an actual and present need for a declaration as to the effects of the pre-petition ownership structure of TutoringZone.

84.     Such declaration deals with a present controversy with respect to an ascertainable state of facts as determined under Count I.  Specifically, the Trustee asserts that Florida law provides that limited liability company interests may be fully levied where there are no non-

17

Debtor members of the limited liability company.  If the interest is owned as entireties property, then it is "solely owned" by a single juridical entity for the purposes of Florida law.  Because that entity—the Debtors as husband and wife—jointly sought bankruptcy protection, entireties assets fully succeeded to the Bankruptcy Estate and the Trustee can fully manage TutoringZone and can sell all rights to TutoringZone, including full managerial rights.

85.     Subject to the alternative counts for specific declarations below, it is believed that the powers, privileges, and rights associated with ownership in TutoringZone, including but not limited to the right to settle or prosecute claims, are dependent upon the facts or law applicable to the facts.

86.     There are persons who have, or reasonably may have an actual, present, adverse, and antagonistic interest in the subject matter of this count.  Specifically, Matthew Hintze and Larina Hintze may claim that an entireties interest in TutoringZone reserves managerial rights and may seek to enforce Florida law to exclude the Trustee from exercising managerial rights and privileges.

87.     All antagonistic and adverse interests that the Trustee has been made aware of— the Debtors being the persons best situated to raise such issues as they have done—are before the court to resolve the dispute.  If any further adverse interests are identified, the Trustee fully intends to make persons with non-frivolous assertions of interest parties to the dispute.

WHEREFORE, the Trustee prays for a judgment declaring that at the time of the filing of the Petition, that in the event that the Court determines that TutoringZone was owned by Matthew and Larina Hintze as tenants by the entireties, that all right, title, and interest in TutoringZone including managerial rights succeeded by operation of law under 11 U.S.C. § 541

to Theresa Bender as Trustee of the Bankruptcy Estate, and for such other and further relief as is just and proper.

## Count III - Declaratory Judgment (TutoringZone owned jointly but not as entireties)

88.     The Trustee adopts and re-alleges the allegations contained in paragraphs 1-13, 14-23, and 44-65 above.

89.     This is an adversary proceeding to determine an interest in property and obtain a declaratory judgment relating to the same under Bankruptcy Rule 7001(2), (9).

90.     Florida law is applicable to determine the interests of certain persons in a Florida limited liability company under Chapter 608 of the Florida Statutes.  Federal law is applicable to determine the effect of Florida law on the Bankruptcy Code.

91.     Based on statements made by the Debtors' counsel in at least one recent filing and one recent hearing in the Administrative Case, there is a bona fide dispute as to the pre-petition ownership of TutoringZone.  Specifically, the Trustee believes that TutoringZone was solely owned by Matthew Hintze and thus the Trustee succeeded to all right, title, and interest, including managerial rights and interests, upon the filing of the Petition.

92.     This count is filed as an alternative to Count I, along with Counts II and IV. Because Count I seeks an actual declaration of the pre-petition ownership structure of TutoringZone, the allegations of the Debtors have suggested multiple possible outcomes.  This count solely addresses the factual finding that TutoringZone was jointly owned by both Debtors Matthew Bruce and Larina K. Hintze as either joint tenants or tenants in common.

93.     The effect of the findings of the pre-petition ownership structure of TutoringZone will affect administration of the estate because it is one of the few significant assets presumably held by the estate at present.  In the event that TutoringZone is owned as jointly owned property,

there is a further dispute as to the authority of the Trustee to manage TutoringZone and sell whatever interest the Bankruptcy Estate has in TutoringZone. Accordingly, there is an actual and present need for a declaration as to the effects of the pre-petition ownership structure of TutoringZone.

94.     Such declaration deals with a present controversy with respect to an ascertainable state of facts as determined under Count I. Specifically, the Trustee asserts that Florida law provides that limited liability company interests may be fully levied where there are no non-Debtor members of the limited liability company. If the interest is owned jointly with no non-Debtors, then there is no non-Debtor membership interest to be protected against succession as a matter of law. Because Florida law only prevents succession of managerial rights to protect the interest of non-Debtor members, the Petition filed by joint Debtors transferred all rights to the Bankruptcy Estate. Accordingly, the Trustee can fully manage TutoringZone and can sell all rights to TutoringZone, including full managerial rights.

95.     Subject to the alternative counts for specific declarations above and below, it is believed that the powers, privileges, and rights associated with ownership in TutoringZone, including but not limited to the right to settle or prosecute claims, are dependent upon the facts or law applicable to the facts.

96.     There are persons who have, or reasonably may have an actual, present, adverse, and antagonistic interest in the subject matter of this count. Specifically, Matthew Hintze and Larina Hintze may claim that a joint interest in TutoringZone reserves managerial rights and may seek to enforce Florida law to exclude the Trustee from exercising managerial rights and privileges.

97.    All antagonistic and adverse interests that the Trustee has been made aware of—the Debtors being the persons best situated to raise such issues as they have done—are before the court to resolve the dispute.  If any further adverse interests are identified, the Trustee fully intends to make persons with non-frivolous assertions of interest parties to the dispute.

WHEREFORE, the Trustee prays for a judgment declaring that at the time of the filing of the Petition, that in the event that the Court determines that TutoringZone was jointly owned by Matthew and Larina Hintze, that all right, title, and interest in TutoringZone including managerial rights succeeded by operation of law under 11 U.S.C. § 541 to Theresa Bender as Trustee of the Bankruptcy Estate, and for such other and further relief as is just and proper.

**Count IV - Declaratory Judgment (TutoringZone with non-Debtor members)**

98.    The Trustee adopts and re-alleges the allegations contained in paragraphs 1-13, 14-23, and 44-65 above.

99.    This is an adversary proceeding to determine an interest in property and obtain a declaratory judgment relating to the same under Bankruptcy Rule 7001(2), (9).

100.    Florida law is applicable to determine the interests of certain persons in a Florida limited liability company under Chapter 608 of the Florida Statutes.  Federal law is applicable to determine the effect of Florida law on the Bankruptcy Code.

101.    Based on statements made by the Debtors' counsel in at least one recent filing and one recent hearing in the Administrative Case, there is a bona fide dispute as to the pre-petition ownership of TutoringZone.  Specifically, the Trustee believes that TutoringZone was solely owned by Matthew Hintze and thus the Trustee succeeded to all right, title, and interest, including managerial rights and interests, upon the filing of the Petition.

102.    This count is filed as an alternative to Count I, along with Counts II and III. Because Count I seeks an actual declaration of the pre-petition ownership structure of TutoringZone, the allegations of the Debtors have suggested multiple possible outcomes.  This count solely addresses the factual finding that TutoringZone was owned as of the Petition Date at least in part by some person or entity other than the Debtors.

103.    The effect of the findings of the pre-petition ownership structure of TutoringZone will affect administration of the estate because it is one of the few significant assets presumably held by the estate at present.  In the event that TutoringZone is owned in any part by any non-Debtor members, there is a further dispute as to the authority of the Trustee to manage TutoringZone and sell whatever interest the Bankruptcy Estate has in TutoringZone. Accordingly, there is an actual and present need for a declaration as to the effects of the pre-petition ownership structure of TutoringZone.

104.    Such declaration deals with a present controversy with respect to an ascertainable state of facts as determined under Count I.  Specifically, the Trustee asserts that section 541(a) of the Bankruptcy Code requires that all legal or "equitable interests of the Debtor in property" is transferred to the Bankruptcy Estate upon filing the Petition.  The oft-asserted limitation on remedies for creditors executing against Florida limited liability companies is irrelevant because management rights are equitable interests and any "charging lien" statute or limitation, or operating agreement limitation, would be "applicable nonbankruptcy law that restricts or conditions transfer of such interest" that is nullified under section 541(c)(1)(A) of the Code. Similarly, section 608.4237 of the Florida Statutes is nullified by section 541(c)(1)(B) of the Code.  Accordingly, the Trustee can fully manage TutoringZone to the extent of the pre-petition interest that was transferred to the Bankruptcy Estate.

105.    Subject to the alternative counts for specific declarations above, it is believed that the powers, privileges, and rights associated with ownership in TutoringZone, including but not limited to the right to settle or prosecute claims, are dependent upon the facts or law applicable to the facts.

106.    There are persons who have, or reasonably may have an actual, present, adverse, and antagonistic interest in the subject matter of this count.  Specifically, Matthew Hintze and Larina Hintze may claim that a joint interest in TutoringZone reserves managerial rights and any other member of TutoringZone may claim the right to exclude non-members from management authority. Such parties may seek to enforce Florida law to exclude the Trustee from exercising managerial rights and privileges.

107.    All antagonistic and adverse interests that the Trustee has been made aware of— the Debtors and Paul Hintze being the persons best situated to raise such issues as they have done—are before the court to resolve the dispute.  If any further adverse interests are identified, the Trustee fully intends to make persons with non-frivolous assertions of interest parties to the dispute.

WHEREFORE, the Trustee prays for a judgment declaring that at the time of the filing of the Petition, that in the event that the Court determines that TutoringZone was jointly owned at least in part by any person other than the Debtors, that all right, title, and interest of Matthew and Larina Hintze in TutoringZone including managerial rights succeeded by operation of law under 11 U.S.C. § 541 to Theresa Bender as Trustee of the Bankruptcy Estate, and for such other and further relief as is just and proper.

## Count V - Fraudulent Transfer § 548(a)(1)(A) (TutoringZone additional members)

108.    The Trustee adopts and re-alleges the allegations contained in paragraphs 1-13, 14-23, and 44-65 above.

109.    This is an adversary proceeding to recover property of the estate under Bankruptcy Rule 7001(1).  This count invokes the Trustee's avoidance powers under 11 U.S.C. § 548(a)(1)(A).

110.    This count is filed as a companion to Count IV and as an alternative to Count I. Specifically, Count I seeks an actual declaration of the pre-petition ownership structure of TutoringZone, while Count IV addresses the conclusion that TutoringZone has some member other than the Debtors.

111.    This count incorporates the alternative factual finding in Count IV, based on the Debtors' assertions that Paul Hintze was a pre-petition member of TutoringZone and addresses the consequences thereof.  The Trustee asserts that this alternative pleading is without prejudice to the Trustee's actual position under Count I that no such transfer has occurred.

112.    On the date of the May 27, 2011 settlement with Ethan Fieldman, Matthew Hintze had a 100% interest in TutoringZone.  Previously, only Matthew Hintze and Ethan Fieldman had interests in TutoringZone.

113.    On or about June 5, 2011, and in any event no earlier than May 27, 2011 within two years of the filing of the Petition, Matthew Hintze caused to be transferred some undisclosed portion of his interest in TutoringZone to Paul Hintze.

114.    Any such transfer of some portion of membership interest was not purchased for value.  Nor did Paul Hintze invest in the buyout of Mr. Fieldman's membership interest in TutoringZone.

115.    Prior to the transfer, the Debtors became highly leveraged on the buyout of the TutoringZone entity which would have served as the Debtors' most substantial asset save their homestead.  The Debtors were actually insolvent at the time of the transfer.

116.    Under oath, Matthew Hintze testified that the only reason to add an additional member was professional advice that "the State of Florida frowns on one member LLCs, and so I was encouraged to add a family member."  The only extent to which, in 2011, Florida frowned on single-member limited liability companies was their susceptibility to execution following the Florida Supreme Court's decision in *Olmstead v. FTC*, 44 So. 3d 76 (Fla. 2010).

117.    The addition of any members was accomplished for the sole and actual purpose of hindering and delaying creditors of the Debtors following the Debtors' highly-leveraged buyout of TutoringZone.  Accordingly, the transfer was made with the intent to hinder, delay, or defraud a creditor.

118.    Any such transfer of any membership interest in TutoringZone was made to a statutory insider, specifically a relative of Matthew Hintze.

119.    Any such transfer did not affect the overall control structure of TutoringZone, with Matthew Hintze exercising authority only as constrained by an agreement with other investors.

120.    The Trustee reserves the right to amend this count in the event that other undisclosed transfers are later identified in the course of discovery.

WHEREFORE, the Trustee prays for a judgment avoiding any transfer of membership interest in TutoringZone from Matthew Hintze (and to any other later-discovered transferee) and for such other relief as is just and proper.

**Count VI - Fraudulent Transfer § 548(a)(1)(B) (TutoringZone additional members)**

121.   The Trustee adopts and re-alleges the allegations contained in paragraphs 1-13, 14-23, and 44-65 above.

122.   This is an adversary proceeding to recover property of the estate under Bankruptcy Rule 7001(1).  This count invokes the Trustee's avoidance powers under 11 U.S.C. § 548(a)(1)(B).

123.   This count is filed as a companion to Count IV and as an alternative to Count I. Specifically, Count I seeks an actual declaration of the pre-petition ownership structure of TutoringZone, while Count IV addresses the conclusion that TutoringZone has some member other than the Debtors.

124.   This count incorporates the alternative factual finding in Count IV, based on the Debtors' assertions that Paul Hintze was a pre-petition member of TutoringZone and addresses the consequences thereof.  The Trustee asserts that this alternative pleading is without prejudice to the Trustee's actual position under Count I that no such transfer has occurred.

125.   On the date of the May 27, 2011 settlement with Ethan Fieldman, Matthew Hintze had a 100% interest in TutoringZone.  Previously, only Matthew Hintze and Ethan Fieldman had interests in TutoringZone.

126.   On or about June 5, 2011, and in any event no earlier than May 27, 2011 within two years of the filing of the Petition, Matthew Hintze caused to be transferred some undisclosed portion of his interest in TutoringZone to Paul Hintze.

127.   The Debtors did not receive reasonably equivalent value for the transfer because Paul Hintze tendered nothing of value in exchange for the membership interest transferred.

128.   At the time of any such transfer, the Debtors were insolvent.

129.   Any such transfer was made shortly after the Debtors incurred substantial debts.

130.    Under oath, Matthew Hintze testified that the only reason to add an additional member was professional advice that "the State of Florida frowns on one member LLCs, and so I was encouraged to add a family member."   The only extent to which, in 2011, Florida frowned on single-member limited liability companies was their susceptibility to execution following the Florida Supreme Court's decision in *Olmstead v. FTC*, 44 So. 3d 76 (Fla. 2010).

131.    Accordingly, any such transfer of any membership interest in TutoringZone was made to a statutory insider, specifically a relative of Matthew Hintze, under an employment contract.

132.    The Trustee reserves the right to amend this count in the event that other undisclosed transfers are later identified in the course of discovery.

WHEREFORE, the Trustee prays for a judgment avoiding any transfer of membership interest in TutoringZone from Matthew Hintze (and to any other later-discovered transferee) and for such other relief as is just and proper.

## Count VII - Fraudulent Transfer § 726.105(1)(a) (TutoringZone additional members)

133.    The Trustee adopts and re-alleges the allegations contained in paragraphs 1-13, 14-23, and 44-65 above.

134.    This is an adversary proceeding to recover property of the estate under Bankruptcy Rule 7001(1).  This count invokes the Trustee's strong-arm authority under section 544(b)(1) to bring a claim for those creditors whose claims arose on or before May 27, 2011 under sections 726.105(1)(a) and 726.108(1)(a) of the Florida Statutes.

135.    This count is filed as a companion to Count IV and as an alternative to Count I. Specifically, Count I seeks an actual declaration of the pre-petition ownership structure of

TutoringZone, while Count IV addresses the conclusion that TutoringZone has some member other than the Debtors.

136.     This count incorporates the alternative factual finding in Count IV, based on the Debtors' assertions that Paul Hintze was a pre-petition member of TutoringZone and addresses the consequences thereof.  The Trustee asserts that this alternative pleading is without prejudice to the Trustee's actual position under Count I that no such transfer has occurred.

137.     On the date of the May 27, 2011 settlement with Ethan Fieldman, Matthew Hintze had a 100% interest in TutoringZone.  Previously, only Matthew Hintze and Ethan Fieldman had interests in TutoringZone.

138.     On or about June 5, 2011, and in any event no earlier than May 27, 2011 within two years of the filing of the Petition, Matthew Hintze caused to be transferred some undisclosed portion of his interest in TutoringZone to Paul Hintze.

139.     Any such transfer of some portion of membership interest was not purchased for value.  Nor did Paul Hintze invest in the buyout of Mr. Fieldman's membership interest in TutoringZone.

140.     Prior to the transfer, the Debtors became highly leveraged on the buyout of the TutoringZone entity which would have served as the Debtors' most substantial asset save their homestead.  The Debtors were actually insolvent at the time of the transfer.

141.     Under oath, Matthew Hintze testified that the only reason to add an additional member was professional advice that "the State of Florida frowns on one member LLCs, and so I was encouraged to add a family member."  The only extent to which, in 2011, Florida frowned on single-member limited liability companies was their susceptibility to execution following the Florida Supreme Court's decision in *Olmstead v. FTC*, 44 So. 3d 76 (Fla. 2010).

142.    The addition of any members was accomplished for the sole and actual purpose of hindering and delaying creditors of the Debtors following the Debtors' highly-leveraged buyout of TutoringZone.  Accordingly, the transfer was made with the intent to hinder, delay, or defraud a creditor.

143.    The transfer of any membership interest in TutoringZone was made to a statutory insider, specifically a relative of Matthew Hintze.

144.    The transfer did not affect the overall control structure of TutoringZone, with Matthew Hintze exercising authority only as constrained by an agreement with other investors.

145.    The Trustee reserves the right to amend this count in the event that other undisclosed transfers are later identified in the course of discovery.

WHEREFORE, the Trustee prays for a judgment avoiding any transfer of membership interest in TutoringZone to Paul Hintze (and any other later-discovered transferee) and for such other relief as is just and proper.

### Count VII - Fraudulent Transfer § 726.106(1) (TutoringZone additional members)

146.    The Trustee adopts and re-alleges the allegations contained in paragraphs 1-13, 14-23, and 44-65 above.

147.    This is an adversary proceeding to recover property of the estate under Bankruptcy Rule 7001(1).  This count invokes the Trustee's strong-arm authority under section 544(b)(1) to bring a claim for those creditors whose claims arose on or before May 27, 2011 under sections 726.106(1) and 726.108(1)(a) of the Florida Statutes.

148.    This count is filed as a companion to Count IV and as an alternative to Count I.  Specifically, Count I seeks an actual declaration of the pre-petition ownership structure of

TutoringZone, while Count IV addresses the conclusion that TutoringZone has some member other than the Debtors.

149.    This count incorporates the alternative factual finding in Count IV, based on the Debtors' assertions that Paul Hintze was a pre-petition member of TutoringZone and addresses the consequences thereof.  The Trustee asserts that this alternative pleading is without prejudice to the Trustee's actual position under Count I that no such transfer has occurred.

150.    On the date of the May 27, 2011 settlement with Ethan Fieldman, Matthew Hintze had a 100% interest in TutoringZone.  Previously, only Matthew Hintze and Ethan Fieldman had interests in TutoringZone.

151.    On or about June 5, 2011, and in any event no earlier than May 27, 2011 within two years of the filing of the Petition, Matthew Hintze caused to be transferred some undisclosed portion of his interest in TutoringZone to Paul Hintze.

152.    The Debtors did not receive reasonably equivalent value for the transfer because Paul Hintze tendered nothing of value in exchange for the membership interest transferred.

153.    At the time of the transfer, the Debtors were insolvent.

154.    Accordingly, the transfer of any membership interest in TutoringZone was made to a statutory insider, specifically a relative of Matthew Hintze.

155.    The Trustee reserves the right to amend this count in the event that other undisclosed transfers are later identified in the course of discovery.

WHEREFORE, the Trustee prays for a judgment avoiding any transfer of membership interest in TutoringZone to Paul Hintze (and any other later-discovered transferee) and for such other relief as is just and proper.

## Count IX - Declaratory Judgment (Post-petition TutoringZone actions)

156.    The Trustee adopts and re-alleges the allegations contained in paragraphs 1-13, 14-23, and 44-65 above.

157.    This is an adversary proceeding to determine an interest in property and obtain a declaratory judgment relating to the same under Bankruptcy Rule 7001(2), (9).

158.    This count is filed as a companion to Count IV and as an alternative to Count I. Specifically, Count I seeks an actual declaration of the pre-petition ownership structure of TutoringZone, while Count IV addresses the conclusion that TutoringZone has some member other than the Debtors.

159.    This count incorporates the alternative factual finding in Count IV, based on the Debtors' assertions that Paul Hintze was a pre-petition member of TutoringZone and addresses the consequences thereof.  The Trustee asserts that this alternative pleading is without prejudice to the Trustee's actual position under Count I that no such transfer has occurred.

160.    Based on the earlier counts, there is a bona fide dispute as to the pre-petition ownership of TutoringZone.  There is a corresponding bona fide dispute as to the authority of TutoringZone to take action post-petition.  Specifically, the Trustee believes that the Bankruptcy Estate possesses the majority managerial control exercised by the Debtors in the June 2012 sale of TutoringZone's intellectual property and the Trustee has the right to exercise this managerial control.

161.    There is no formal operating agreement regulating governance of TutoringZone and the majority interest possessed by the Debtors pre-petition is sufficient to make all necessary managerial decisions without agreement of any other member.

162.    The pre-petition ownership structure of TutoringZone may have affected and will affect administration of the estate because based on statements of the Debtor, it is likely that any additional members of TutoringZone are acting under the guidance that the Trustee has no managerial authority irrespective of the fractional interest of the Debtors in TutoringZone pre-petition.  Thus, members may have been acting without authority post-petition, as confirmed by the attempted January 23, 2014 assignment.  Accordingly, there is an actual and present need for a declaration as to the post-petition management structure of TutoringZone and the validity of any actions taken post-petition.

163.    Such declaration deals with a present controversy with respect to an ascertainable state of facts.  Specifically, the Trustee asserts that a determination can be made as to which person or persons believe that they have managerial control over TutoringZone and their actions can be identified with discovery.  That determination would be valid for all times post-petition.

164.    The powers, privileges, and rights associated with managerial control of TutoringZone, including but not limited to the right to settle or prosecute claims, as well as the possible disposition of assets of TutoringZone, are dependent upon the facts or law applicable to the facts.

165.    There are persons who have, or reasonably may have an actual, present, adverse, and antagonistic interest in the subject matter of this count.  Specifically, Paul Hintze and Bruce Hintze may claim interest in TutoringZone or in assets or TutoringZone and may seek to enforce Florida law to exclude the Trustee from exercising managerial rights and privileges and from voiding any prior actions taken.

166.    All antagonistic and adverse interests that the Trustee has been made aware of— the Debtors, Paul Hintze, and Bruce Hintze—are before the court to resolve the dispute.  If any

further adverse interests are identified, the Trustee fully intends to make persons with non-frivolous assertions of interest parties to the dispute.

WHEREFORE, the Trustee prays for a judgment declaring that the Trustee has, and has had since the filing of the Petition, majority membership interest in TutoringZone sufficient and necessary to exercise managerial rights succeeded by operation of law under 11 U.S.C. § 541 to Theresa Bender as Trustee of the Bankruptcy Estate, including without limitation the right to authorize TutoringZone to bring any action, a judgment voiding as *ultra vires* any actions taken without the Trustee's consent post-petition, a judgment voiding any action taken by any transferee of any property of TutortingZone, and for such other and further relief as is just and proper.

### Count X - Breach of Duty of Care (Transfer of Claims)

167.     The Trustee adopts and re-alleges the allegations contained in paragraphs 1-13, 14-23, and 44-65 above.

168.     This count is filed as a companion to Count IV and as an alternative to Count IX. Specifically, Count I seeks an actual declaration of the pre-petition ownership structure of TutoringZone, Count IV involves the alternative finding that some non-Debtor member of TutoringZone exists, while Count IX seeks to nullify any purported actions taken on behalf of TutoringZone.  In the event that such actions are not unwound, the actions taken are nonetheless a breach of duties owed to TutoringZone.

169.     The Trustee brings this action on behalf of herself as a member of TutoringZone and on behalf of TutoringZone.

170.     The defendant Paul Hintze has taken actions to purportedly wind down the affairs of TutoringZone, including but not necessarily limited to the January 23, 2014 assignment.

171.    The Trustee was not informed of such action prior to it purportedly taking place and the Trustee did not authorize such action.

172.    The Trustee has a controlling interest in the right to manage the affairs of TutoringZone.   Paul Hintze has never communicated with the Trustee with respect to TutoringZone.

173.    In the event that Paul Hintze was authorized to take any action without consultation of the controlling interest, such right, power, and authority would impose a duty of care on Paul Hintze.

174.    On January 9, 2014, the Bankruptcy Court approved a compromise of certain claims initially raised by the Debtors and assumed by the Trustee as improperly asserted by the Debtors.  TutoringZone has claims parallel to those compromised based on investors' relations with TutoringZone.

175.    The assignment of claims for the sum of $1,000 failed to achieve reasonably equivalent value of the transferred claims, including by extension all claims raised below.

176.    Paul Hintze acted intentionally or willfully to shield the Debtors from the consequences of improper pre-petition actions and to ensure that an insider of the Debtors would have the right to control the parallel claims.  Such actions were not taken for the benefit of TutoringZone but for the benefit of the Debtors and those associated with the Debtors.

177.    In the alternative, Paul Hintze acted recklessly or grossly negligent by (1) failing to properly investigate the value of the claims transferred; (2) failing to properly market the claims transferred; (3) failing to inform the Trustee of the acts to be taken or solicit the advice of the controlling interest in TutoringZone; (4) acting to dispose of assets disputed in a highly contested bankruptcy matter in which multiple family members are involved.

178.    In so acting, Paul Hintze has knowledge concerning the disputed nature of the entity and the Bankruptcy Estate that would make unwarranted any reliance upon advice of others in determining the appropriateness of the sale.

179.    In so acting, Paul Hintze acted in bad faith and otherwise inconsistent with his duties to TutoringZone.

180.    In so acting, Paul Hintze caused damage to TutoringZone and to the Bankruptcy Estate.

WHEREFORE, in the event that actions taken on behalf of TutoringZone are not unwound, the Trustee and TutoringZone pray for a judgment against Paul Hintze awarding damages and costs, and for such other and further relief as is just and proper.

## Count XI - Civil Conspiracy/Constructive Trust

181.    The Trustee adopts and re-alleges the allegations contained in paragraphs 1-13, 14-23, and 44-65 above.

182.    This count is filed as a companion to Count X and an alternative to Count IX. This is a proceeding under state law related to the assets of the estate that would affect debtor-creditor relationships.  The Trustee brings this action on behalf of herself as a member of TutoringZone and on behalf of TutoringZone against Bruce Hintze

183.    Since the middle of 2013, if not even since the filing of the Petition, the status of TutoringZone as a key asset of the Bankruptcy Estate has been the essence of this matter. TutoringZone had been left a non-functioning shell based on the improper transactions attempting to bifurcate its assets from its liabilities through this bankruptcy proceeding.

184. Despite the highly contested nature of this asset and the clear forum to resolve disputes, certain insiders of the Debtors have resorted to self-help remedies in a willful attempt to frustrate the actions of the Trustee.

185. The defendant Bruce Hintze, despite failing to file a proof of claim in the bankruptcy, attempted to participate by late filings prior to the anticipated sale of the Debtors' membership interest in TutoringZone.   The Trustee was compelled to devote resources overcoming Bruce Hintze's unsupported objections.

186. The defendant Bruce Hintze has had sufficient knowledge of the proceedings to know or have reason to know of the contested nature of certain assets such as TutoringZone.

187. Followingh the Trustee's withdrawal of the Notice of Sale, Bruce Hintze orchestrated a scheme to obtain the beneficial interest of TutoringZone for himself, to wit, its claims.  Bruce Hintze knew, or should have known, that Paul Hintze was without authority to effectuate such transfer.

188. Paul Hintze and Bruce Hintze conspired with the Debtors to protect the Debtors, family members of both Paul Hintze and Bruce Hintze, from further exposure or risk in the bankruptcy by secreting the claims of TutoringZone from indirect administration.  As part of this conspiracy, Bruce Hintze and Paul Hintze agreed to orchestrate a sale of assets that would breach Paul Hintze's duty of care—assuming that Paul Hintze had any authority to begin with—to TutoringZone.

189. Even if Paul Hintze would have arguably had the authority to effectuate such transfer, the minimal value presented—indeed, in an amount far less than the legal fees paid by any party for any substantial hearing to date—reflected a patently unreasonable value for such assets.

190.    Such transfer would breach the implied promise to act in the best interests of the corporation and any reliance thereon in authorizing Paul Hintze to have so acted on behalf of the corporation.

191.    The transfer reflected not an arms-length transaction to maximize the value of TutoringZone for its creditors but a willful attempt to strip the shell of its last remaining assets to the detriment of its creditors.

192.    The overall effect of the conspiracy between the Paul Hintze and Bruce Hintze, was to deprive TutoringZone of substantial value and to defraud its creditors.

193.    A constructive trust should be imposed over any property transferred from Paul Hintze to Bruce Hintze or other identified conspiring transferees, as well as any transfer of property traceable thereto.

WHEREFORE, in the event that actions taken on behalf of TutoringZone are not unwound as void, the Trustee and TutoringZone pray for a judgment imposing a constructive trust against any and all property disposed of by Paul Hintze post-petition, including but not limited to the January 23, 2014 assignment of claims to Bruce Hintze, and for such other and further relief as is just and proper.

### Count XII - Objection to Discharge Under § 727(a)(4)(A)

194.    The Trustee adopts and re-alleges the allegations contained in paragraphs 1-13, 14-23, and 44-65 above.

195.    This is an adversary proceeding to object to a discharge under Bankruptcy Rule 7001(4).  Specifically, the Trustee brings the action under 11 U.S.C. § 727(a)(4)(A).

196.    This count is filed as a companion to Counts II-IV and as an alternative to Count I.  Specifically, Count I seeks an actual declaration of the pre-petition ownership structure of

TutoringZone, while Counts II-IV addresses the conclusion that TutoringZone had at the time of the filing of the Petition some member other than Matthew Hintze.

197.    In the event that TutoringZone is determined to have had some other member at the time of the filing of the Petition, such a determination would conflict with multiple assertions made by Matthew Hintze under oath and penalty of perjury, including the following:

      a. The assertion on Schedule B of the Initial Schedules that Matthew Hintze solely owned a 100% interest in TutoringZone, LC, as indicated by the selection of "H" in response to the column requiring an identification of property as "Husband, Wife, Joint, or Community."

      b. The failure to list any transfer of any interest in TutoringZone, LC "transferred either absolutely or as security within two years immediately preceding the commencement of this case" as required by Question 10 of the Debtors' Statement of Financial Affairs.

      c. The statements made in his 2004 examination, in response to a direct question, that Paul Hintze was never given any equity interest in TutoringZone and that Larina Hintze had no ownership interest except on the basis that she is the wife of Matthew Hintze.

198.    The Debtors raised for the first time in the First Debtor Objection their assertion that the 100% interest was a joint interest, presumably as between Matthew and Larina Hintze. The First Debtor Objection did not disclose any interest of Paul Hintze and instead contended that the Trustee only succeeded to the Debtors' "right to receive distributions."

199.    The Debtors in their Amended Debtor Objection did not concretely state that Paul Hintze was a member of TutoringZone. The Amended Debtor Objection merely stated that there

were three members of TutoringZone according to documents filed with the Florida Division of Corporations.  As such, it is not clear that to date the Debtors have made a false statement or oath.

200.    If this Court were to find that an additional member of TutoringZone existed at the time of the filing of the Petition, however, then the prior statements of Matthew Hintze under oath would be false.

201.    Any false statements of Matthew Hintze would have been made knowingly in connection with the case.  TutoringZone was, by the Debtors' own assertion, the key asset of the Debtors at that time.  Matthew Hintze is a sophisticated and educated investor that has nearly received a Ph.D. in finance and whose business involves tutoring others in finance.  Accordingly, he could be expected to recall whether ownership rights in this key asset were transferred at any point.  Moreover, Matthew Hintze could be expected to recall such a transfer when specifically prompted with the issue of Paul Hintze's interest in his 2004 examination.

202.    Any false statements would be material because they bear a relationship to the Debtors's business transactions and concern the discovery of assets, business dealings, and existence and disposition of the Debtors' property.  The participants here, including the Trustee and the Court, have already expended significant resources addressing issues ancillary to ownership. Such issues would have been more expeditiously addressed had proper information been disclosed at the outset of the case.

203.    The above facts are part of a pattern of behavior previously addressed by the Bankruptcy Court in the Debtors' assertion of certain counterclaims and third-party claims that were not disclosed on the Debtors' Petition.  The unauthorized assertion of such claims has

compelled the Trustee to intervene to enforce the rights of the Bankruptcy Estate and has exposed the estate to additional unwarranted litigation for the strategic benefit of the Debtors.

204.     Any false statements appear to have been made strategically, reserving the issue of joint ownership for nearly fifteen months into the case and asserted for the first time immediately before a crucial hearing in which the Debtors faced a nontrivial risk of the sale of the membership interest in the entity.

WHEREFORE, in the event that the Court determines that TutoringZone was owned by some person other than Matthew Hintze, the Trustee prays for a judgment denying the Debtors their discharge pursuant to 11 U.S.C. § 727(a)(4) and for such other and further relief as is just and proper.

### Count XIII - Avoidance of Preferential Transfer (membership interest)

205.     The Trustee adopts and re-alleges the allegations contained in paragraphs 1-13 and 14-43 above.

206.     This is an adversary proceeding to recover property of the estate under Bankruptcy Rule 7001(1).  This count invokes the Trustee's avoidance powers under 11 U.S.C. § 547(b).

207.     The June 2012 transaction made few changes to the tutoring business in shifting from TutoringZone to TZ2.  The key assets of the business, specifically the intellectual property and key manpower, remained intact.  Customers experienced a seamless transition because the intellectual property transfer allowed TZ2 to use all marks and other indicia of TutoringZone's business.  The only changes were that the business had a new owner and the business was "on paper" no longer burdened by the debts incurred for ordinary business expenses and any practical requirement to service investor debts owed by the Debtors.

208.     The June 2012 transaction involved no consideration to TutoringZone or from TZ2, with the only substantial consideration being the forgiveness of debt flowing from Mr. James to the benefit of the Debtors.

209.     The former business creditors could assert successor liability claims against TZ2 on a de facto merger or continuation of business theory.  The investor creditors may be denied recovery by the Debtors' bankruptcy, dischargeability and discharge claims notwithstanding.

210.     Accordingly, the practical economic reality undergirding the formation of TutoringZone II, LLC was not a transfer of intellectual property between TutoringZone and TZ2, but instead the transfer of the membership interest in TutoringZone to Mr. James for a certain consideration.

211.     The practical economic reality of the transaction was an indirect method of disposing of the membership interest in TutoringZone.  The Debtors improperly exerted control over TutoringZone to cause it to transfer its substantial assets while receiving no consideration.

212.     The effective transfer of the membership interest in TutoringZone was for the benefit of a creditor, Mr. James, whose full ownership of TZ2 vested him with a substantial asset.

213.     The debt forgiveness demonstrates that the transfer occurred for or on account of an antecedent debt owed by the Debtor, to wit the debt represented by Claim 22 and originating on November 10, 2010 as further supplemented.

214.     The Debtors were insolvent at the time of the transfer.

215.     Mr. James was a friendly creditor, a long-time family friend, a former instructor and advisor to Matthew Hintze, and trusted to preserve the rights and assets of the Debtors

through the above-described abnormal and improper transactions.  Mr. James qualifies as a non-statutory insider for the purposes of the Bankruptcy Code.

216.     The transfer to, and for the benefit of, an insider occurred between ninety days and one year before the date of the filing of the Petition.

217.     The receipt of the value of TutoringZone permitted Mr. James to obtain more than he would have in a liquidation had the transfer not been made, even assuming that Mr. James had timely filed his proof of claim and not been relegated to junior position in the administrative case pursuant to 11 U.S.C. § 726(a)(3).  Specifically, the transfer allowed Mr. James to extract value from an otherwise insolvent entity while the balance of the Bankruptcy Estate offers little liquidation value.

218.     The transfer provided no new value to the Debtors and was not in the ordinary course of business or financial affairs of the Debtor and the transferee.  Similarly, the transfer was not made according to ordinary business terms.

219.     The aggregate value of all property affected by the transfer exceeds $5,000.

WHEREFORE, the Trustee prays for a judgment avoiding the above-referenced transfers dated in 2012 between the either or both of the Debtors, TutoringZone, TZ2, and Mr. James and for such other relief as is just and proper.

### Count XIV - Fraudulent Transfer § 548(a)(1)(A) (membership interest)

220.     The Trustee adopts and re-alleges the allegations contained in paragraphs 1-13 and 14-43 above.

221.     This is an adversary proceeding to recover property of the estate under Bankruptcy Rule 7001(1).  This count invokes the Trustee's avoidance powers under 11 U.S.C. § 548(a)(1)(A).

222.    The June 2012 transaction made few changes to the tutoring business in shifting from TutoringZone to TZ2.  The key assets of the business, specifically the intellectual property and key manpower, remained intact.  Customers experienced a seamless transition because the intellectual property transfer allowed TZ2 to use all marks and other indicia of TutoringZone's business.  The only changes were that the business had a new owner and the business was "on paper" no longer burdened by the debts incurred for ordinary business expenses and any practical requirement to service investor debts owed by the Debtors.

223.    The June 2012 transaction involved no consideration to TutoringZone or from TZ2, with the only substantial consideration being the forgiveness of debt flowing from Mr. James to the benefit of the Debtors.

224.    The former business creditors could assert successor liability claims against TZ2 on a de facto merger or continuation of business theory.  The investor creditors may be denied recovery by the Debtors' bankruptcy, dischargeability and discharge claims notwithstanding.

225.    Accordingly, the practical economic reality undergirding the formation of TutoringZone II, LLC was not a transfer of intellectual property between TutoringZone and TZ2, but instead the transfer of the membership interest in TutoringZone to Mr. James for a certain consideration.

226.    The practical economic reality of the transaction was an indirect method of disposing of the membership interest in TutoringZone.  The Debtors improperly exerted control over TutoringZone to cause it to transfer its substantial assets while receiving no consideration.

227.    The transfer was incurred with actual intent to hinder, delay, or defraud those investor creditors that declined to participate in the improper transaction.  The Debtors intended to effectively continue the business but discard liabilities through personal bankruptcy, even

though the business assets would have otherwise been available in bankruptcy but for the transfer.

228.    Any earlier transactions purporting to place any lien on the substantial assets of TutoringZone in exchange for plainly insufficient operating capital were part of this overall scheme.

229.    The Debtors were insolvent at the time of the transfer and had contemplated personal bankruptcy as a mechanism for "saving" the business for some time prior to executing the scheme.

230.    Mr. James was a friendly creditor, a long-time family friend, a former instructor and advisor to Matthew Hintze, and trusted to preserve the rights and assets of the Debtors through the above-described abnormal and improper transactions.  Mr. James qualifies as a non-statutory insider for the purposes of the Bankruptcy Code.

231.    The Debtors orchestrated the timing of the filing of the Petition to fall outside the standard ninety-day window for preferential transfers.

232.    The Debtors retained effective day-to-day control of the operation of TZ2 and Mr. James remained only a passive investor.

233.    The value of the consideration received was not reasonably equivalent to the value of the assets improperly transferred.

WHEREFORE, the Trustee prays for a judgment avoiding the above-referenced transfers dated in 2012 between the Debtors, TutoringZone, Mr. James, and Cynthia Frenchman, and for such other relief as is just and proper.

## Count XV - Fraudulent Transfer § 548(a)(1)(B) (membership interest)

234.    The Trustee adopts and re-alleges the allegations contained in paragraphs 1-13 and 14-43 above.

235.    This is an adversary proceeding to recover property of the estate under Bankruptcy Rule 7001(1).  This count invokes the Trustee's avoidance powers under 11 U.S.C. § 548(a)(1)(B).

236.    The June 2012 transaction made few changes to the tutoring business in shifting from TutoringZone to TZ2.  The key assets of the business, specifically the intellectual property and key manpower, remained intact.  Customers experienced a seamless transition because the intellectual property transfer allowed TZ2 to use all marks and other indicia of TutoringZone's business.  The only changes were that the business had a new owner and the business was "on paper" no longer burdened by the debts incurred for ordinary business expenses and any practical requirement to service investor debts owed by the Debtors.

237.    The June 2012 transaction involved no consideration to TutoringZone or from TZ2, with the only substantial consideration being the forgiveness of debt flowing from Mr. James to the benefit of the Debtors.

238.    The former business creditors could assert successor liability claims against TZ2 on a de facto merger or continuation of business theory.  The investor creditors may be denied recovery by the Debtors' bankruptcy, dischargeability and discharge claims notwithstanding.

239.    Accordingly, the practical economic reality undergirding the formation of TutoringZone II, LLC was not a transfer of intellectual property between TutoringZone and TZ2, but instead the transfer of the membership interest in TutoringZone to Mr. James for a certain consideration.

240.    The practical economic reality of the transaction was an indirect method of disposing of the membership interest in TutoringZone.  The Debtor(s) improperly exerted control over TutoringZone to cause it to transfer its substantial assets while receiving no consideration.

241.    The $200,000 in debt forgiveness was not reasonably equivalent value in exchange for the transfer of the membership interest based on (1) the prospective future profitability of the membership interest; (2) the unlikelihood of substantial debt collection given the Debtors' impending bankruptcy; and (3) the effective segregation of the beneficial value of the membership interest from its liabilities.

242.    The Intellectual Property Lease and any earlier transactions purporting to place any lien on the substantial assets of TutoringZone in exchange for plainly insufficient operating capital were part of this overall scheme.  The additional consideration failed to approximate reasonably equivalent value for the transaction because the consideration of the Intellectual Property Lease was effectively pro-rata over a ten year period and the parties executed the agreement in contemplation of the Intellectual Property Transfer Agreement within only a few months.

243.    The Debtors were insolvent at the time of the transfer and had contemplated personal bankruptcy as a mechanism for "saving" the business for some time prior to executing the scheme.

WHEREFORE, the Trustee prays for a judgment avoiding the above-referenced transfers dated in 2012 between the Debtors, TutoringZone, Mr. James, and Cynthia Frenchman, and for such other relief as is just and proper.

### Count XVI - Rescission (Intellectual Property Transfer Agreement)

46

244.    The Trustee adopts and re-alleges the allegations contained in paragraphs 1-13 and 14-43 above.

245.    This is a proceeding under state law related to the assets of the estate that would affect debtor-creditor relationships.  This action is brought on behalf of TutoringZone as the plaintiff and TutoringZone II, LLC and Christopher M. James as the defendants.

246.    On or about June 4, 2012, the Intellectual Property Transfer Agreement was executed between TutoringZone and TZ2.  Pursuant to this agreement, TZ2 has been carrying on the former business of TutoringZone using its intellectual property and business marks since that time.

247.    The Intellectual Property Transfer Agreement defined the consideration for the transaction as "$200,000 and other valuable consideration, which is agreed and accepted by the Parties to be full and adequate consideration for the Sale (the *Consideration*).  The payment of the Consideration shall be offset and credited by any amounts owed by Seller to Christopher M. James."

248.    The Parties were defined in the Intellectual Property Transfer Agreement as TutoringZone as the Seller and TZ2 as the Buyer.

249.    TutoringZone received no money from the transfer of intellectual property, which was effectively the "whole consideration" of the contract.  But for the improper scheme, TutoringZone as operated in good faith would not have transferred its intellectual property absent some reasonably equivalent value for the transfer.

250.    Instead, the benefit flowed from Mr. James to the Debtors in the form of debt forgiveness.

251.    Matthew Hintze violated his duty of loyalty and care and exerted undue influence on TutoringZone in compelling it to part with its substantial assets for no consideration. Matthew Hintze executed such transfer documents willfully as part of an artifice or scheme to defraud creditors.  In any event the transfer without consideration would have been grossly negligent or reckless conduct in the stewardship of TutoringZone.

252.    The circumstances demand equitable intervention in the form of rescission of the Intellectual Property Transfer Agreement.  For total failure of consideration, the contract remains voidable at the discretion of TutoringZone.

253.    Mr. James remains jointly and severally liable on the Intellectual Property Transfer Agreement because he executed it as "organizer and managing member" for TZ2 in advance of its valid formation under the laws of the State of Florida where TutoringZone had no actual knowledge of this fact.

WHEREFORE, TutoringZone prays for a judgment voiding the Intellectual Property Transfer Agreement, and for such other relief as is just and proper.

### Count XVII - Breach of Contract (Intellectual Property Transfer Agreement)

254.    The Trustee adopts and re-alleges the allegations contained in paragraphs 1-13 and 14-43 above.

255.    This is a proceeding under state law related to the assets of the estate that would affect debtor-creditor relationships.  This action is brought on behalf of TutoringZone as the plaintiff and TutoringZone II, LLC and Christopher M. James as the defendants.

256.    This count is brought as an alternative to Count XVI to the extent that the Court declines equitable remedies in favor of a money judgment.

257.    On or about June 4, 2012, the Intellectual Property Transfer Agreement was executed between TutoringZone and TZ2.  Pursuant to this agreement, TZ2 has been carrying on the former business of TutoringZone using its intellectual property and business marks since that time.

258.    The Intellectual Property Transfer Agreement defined the consideration for the transaction as "$200,000 and other valuable consideration, which is agreed and accepted by the Parties to be full and adequate consideration for the Sale (the "Consideration").  The payment of the Consideration shall be offset and credited by any amounts owed by Seller to Christopher M. James."

259.    The Parties were defined in the Intellectual Property Transfer Agreement as TutoringZone as the Seller and TZ2 as the Buyer.

260.    TutoringZone received no money from the transfer of intellectual property, which was effectively the "whole consideration" of the contract.  But for the improper scheme, TutoringZone as operated in good faith would not have transferred its intellectual property absent some reasonably equivalent value for the transfer.

261.    Instead, the benefit flowed from Mr. James to the Debtors in the form of debt forgiveness.

262.    Matthew Hintze violated his duty of loyalty and care and exerted undue influence on TutoringZone in compelling it to part with its substantial assets for no consideration. Matthew Hintze executed such transfer documents willfully as part of an artifice or scheme to defraud creditors.  In any event the transfer without consideration would have been grossly negligent or reckless conduct in the stewardship of TutoringZone.

263.     The circumstances demand equitable intervention in the form of rescission of the Intellectual Property Transfer Agreement.  For total failure of consideration, the contract remains voidable at the discretion of TutoringZone.

264.     Mr. James remains jointly and severally liable on the Intellectual Property Transfer Agreement because he executed it as "organizer and managing member" for TZ2 in advance of its valid formation under the laws of the State of Florida where TutoringZone had no actual knowledge of this fact.

265.     In the event that the Court determines rescission to be an inappropriate remedy, TutoringZone demands the full consideration owed under the Intellectual Property Transfer Agreement.

WHEREFORE, TutoringZone prays for a money judgment against Tutoring Zone II, LLC and Christopher M. James, and for such other relief as is just and proper.

## Count XVIII - Rescission (Intellectual Property Lease)

266.     The Trustee adopts and re-alleges the allegations contained in paragraphs 1-13 and 14-43 above.

267.     This is a proceeding under state law related to the assets of the estate that would affect debtor-creditor relationships.  This action is brought on behalf of TutoringZone as the plaintiff and Christopher M. James and Cynthia L. Frenchman as the defendants.

268.     On or about May 22, 2012, the Intellectual Property Lease was executed between TutoringZone and Mr. James and Ms. Frenchman.  Pursuant to this agreement, Mr. James and Ms. Frenchman received the a non-exclusive license to use the business marks and all tutoring materials, including all reproduction, modification, publishing, distribution, and leasing rights "that might reasonably be required to market, sell, and deliver tutoring services."

269.    Neither Mr. James nor Ms. Frenchman intended to develop any independent tutoring business.  Instead, the Intellectual Property Lease was executed as a prelude to and in full contemplation of the eventual sale of intellectual property.

270.    Because sale and the Debtors' bankruptcy was contemplated, there was no ordinary purpose in executing the lease and all the parties knew that the purported $75,000 consideration would be no more than an effective offset against the eventual debt forgiveness embodied in the Intellectual Property Transfer Agreement.

271.    Upon information and belief, TutoringZone did not receive any benefit of any funds disbursed as a result of the Intellectual Property Lease, which went solely to the benefit of the Debtors as consistent with the parties' treatment of the Intellectual Property Transfer Agreement.  This was effectively the "whole consideration" of the contract.

272.    Matthew Hintze violated his duty of loyalty and exerted undue influence on TutoringZone in executing the agreement.  There was no practical ability to expand the business or mark under the circumstances, and the Intellectual Property Lease is more appropriately characterized as a sham prelude to the Intellectual Property Transfer Agreement.

273.    Upon information and belief, the Intellectual Property Lease may have been terminated with the execution of the Intellectual Property Transfer Agreement.  In the event that it was not, the circumstances demand equitable intervention in the form of rescission of the Intellectual Property Transfer Agreement.  For total failure of consideration, the contract remains voidable at the discretion of TutoringZone.

WHEREFORE, TutoringZone prays for a judgment voiding the Intellectual Property Lease, and for such other relief as is just and proper.

## Count XIX - Civil Conspiracy

274.    The Trustee adopts and re-alleges the allegations contained in paragraphs 1-13, 14-43, 246-251, 257-262, and 268-273 above.

275.    This is a proceeding under state law related to the assets of the estate that would affect debtor-creditor relationships.   This action is brought by the Trustee as member of TutoringZone and by TutoringZone against Mr. James and TZ2.

276.    Mr. James and TZ2 conspired with the Debtors to strip TutoringZone of its substantial assets in an effort to create a continuing business interest devoid of TutoringZone's liabilities.   As part of this conspiracy, the Intellectual Property Lease and the Intellectual Property Transfer Agreement were executed and Matthew Hintze came to work for TZ2 as owned by Mr. James.

277.    Matthew Hintze began working for TZ2 after the execution of the Intellectual Property Transfer Agreement.

278.    At the time that Matthew Hintze began working for TZ2, he was still a manager of TutoringZone.   As a manager, Matthew Hintze owed a duty of loyalty to TutoringZone to refrain from competing with TutoringZone in the conduct of its tutoring business.

279.    By working for TZ2, Matthew Hintze breached this duty of care, causing damages to TutoringZone.

280.    By transferring the substantial assets and directing the migration of key personnel from TutoringZone to TZ2, at the direction of and with the agreement of Mr. James and TZ2, Matthew Hintze breached his duty of care to refrain from engaging in grossly negligent or reckless conduct in the management of TutoringZone, as well as his duty of care to refrain from intentional misconduct.

281.   The overall effect of the conspiracy between the Debtors, Mr. James, and TZ2, was to deprive TutoringZone of substantial value and to defraud its creditors.

WHEREFORE, the Trustee and TutoringZone pray for a money judgment against Tutoring Zone II, LLC and Christopher M. James, and for such other relief as is just and proper.

## Count XX -  Determination of Validity of Lien (James-TutoringZone)

282.   The Trustee adopts and re-alleges the allegations contained in paragraphs 1-13 and 14-43 above.

283.   This is an adversary proceeding to determine an interest in property and obtain a declaratory judgment relating to the same under Bankruptcy Rule 7001(2), (9).

284.   Florida law is applicable to determine the validity and extent of the alleged lien because the parties are Florida residents, all relevant agreements were executed in Florida and the alleged security interest was registered in Florida.

285.   There is a bona fide dispute as to validity of the purported lien that Mr. James has over the assets of TutoringZone.   By filing his UCC-1 filing, Mr. James asserts that such a security interest exists.   The Trustee asserts that the only debts owed to Mr. James were owed by the Debtors, that all other business as between Mr. James or entities controlled by Mr. James and TutoringZone were transactions in which monetary consideration allegedly flowed *from* Mr. James, not to him.

286.   Moreover, at the time of the UCC-1 filing, Mr. James had reason to know that TutoringZone did not possess certain key assets that were purportedly encumbered.   The Trustee asserts that the UCC-1 filing was a mere failsafe to further cloud title and dissuade interested parties from bringing appropriate fraudulent transfer actions.

287.    The validity of the lien will affect administration of the estate because of the obligation of the Trustee to administer and wind-down TutoringZone as a non-functioning entity and pay its claims accordingly.  Accordingly, there is an actual and present need for a declaration as to the post-petition management structure of TutoringZone and the validity of any actions taken post-petition.

288.    Such declaration deals with a present controversy with respect to an ascertainable state of facts.  Specifically, whether a debt supporting a security interest existed, whether a security interest was actually created, and whether the security interest was properly perfected can all be determined by the application of facts to the law.

289.    The powers, privileges, and rights associated with claimant priority of TutoringZone are dependent upon the facts or law applicable to the facts.

290.    There are persons who have, or reasonably may have an actual, present, adverse, and antagonistic interest in the subject matter of this count.  Specifically, Mr. James may claim a security interest in the assets of TutoringZone and may seek to enforce Florida law to establish priority over other claimants.

291.    All antagonistic and adverse interests that the Trustee has been made aware of—the Debtors and Mr. James—are before the court to resolve the dispute.  If any further adverse interests are identified, the Trustee fully intends to make persons with non-frivolous assertions of interest parties to the dispute.

WHEREFORE, the Trustee prays for a judgment declaring that Christopher James holds no security interest over any property of TutoringZone, and for such other and further relief as is just and proper.

DATED this 14th day of April, 2014.

/s/ Trevor A. Thompson

**KEITH L. BELL, JR.**
E-mail: kbell@cphlaw.com
Florida Bar No. 573809
**TREVOR A. THOMPSON**
E-mail: tthompson@cphlaw.com
Florida Bar No: 68006
CLARK, PARTINGTON, HART,
 LARRY, BOND & STACKHOUSE
106 East College Avenue, Suite 600
Tallahassee, FL 32301
Telephone: (850) 320-6838
Facsimile: (850) 597-7591
*Special Counsel for the Chapter 7 Trustee and
 TutoringZone, LC*